### CHALKER & LUND CO. et al. v. UNITED STATES.
#### No. 47695.

United States Court of Claims.
Nov. 6, 1951.

Herman J. Galloway, Washington, D. C. (King & King and Paul M. Rhodes, all of Washington, D. C., on the briefs), for the plaintiff.

Gilbert E. Andrews, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen. (R. W. Koskinen, Washington, D. C., on the briefs), for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff made a contract with the Government to do some grading, and to place a concrete floor slab over an area of approximately 43 acres at the Marietta Aircraft Assembly plant, Marietta, Georgia. Work was to begin on November 1, 1942, and was to be completed by February 15, 1943. By several change orders, which called for additional items of work, the completion date was extended to May 4, 1943.

The plaintiff began its work promptly, but was delayed in the early stages by bad weather, its inability to obtain steel when needed, and the failure of other prime contractors on the same job to complete their work in time for the plaintiff to undertake its work on schedule time. As a consequence, the plaintiff fell behind the schedule which it had submitted to the Government. The delays, which were not caused by the fault of either the plaintiff or the Government, would seem to have entitled the plaintiff to an extension of its time for performance. On December 7, 1942, it requested an extension but was told that the Government's policy was to reserve judgment on such requests until the project was nearly completed.

The contracting officer, through his agent, the A. E. M. (see Finding 5) on January 5, 1943, instructed the plaintiff to organize its work on a two-shift basis, because it was behind schedule, and to keep it on that basis until it was brought up to schedule. The plaintiff argues that if the extension of time which it had requested had been considered and granted, it would not have been behind schedule and it could not have been required to put its work on a two-shift basis.

The only available source of supply for concrete for the plaintiff or any of the other contractors on the project who used concrete was the Campbell Coal Company which had a batching plant nearby. It had made subcontracts with all the users of concrete, including the plaintiff, which was by far the largest user. Its subcontracts with several of the other contractors were prior in time to it subcontract with the plaintiff. Its batching plant's capacity was sufficient to supply all users, but its hauling contractor, Conserco, did not have sufficient trucks or drivers to deliver concrete to the several contractors as fast as they were ready to use it. In these circumstances the A. E. M., in order to forward the progress of the project as a whole, required the Campbell Coal Company to put its batching and trucking on a two-shift basis, and to add trucks, drivers, and repair mechanics needed for such a basis. The A. E. M. also allocated the available concrete among the several contractors. While, under the allocation, the plaintiff received less concrete per shift than it had received before, it would seem that it must have received much more concrete per day than it had before, since it received 83 percent of all the concrete batched by the Campbell Coal Company. The situation called for the exercise by the A. E. M. of its powers of supervision. Several contractors, the plaintiff being the principal one, were drawing upon the only source of supply of a material essential to the progress of the job as a whole. The plaintiff had no firm commitment of Campbell for any specified amount of concrete, and its contract was junior in time to other contracts. Unless the progress of the project was to be left to the caprice of Campbell, some one had to take charge.

■ On January 27, the plaintiff was required to put its work on a three-shift basis, in order to try to bring it up to schedule. When, on January 6, it had been ordered to go on a two-shift basis, it had, instead of working two eight-hour shifts, worked two ten-hour shifts, because it could not get workmen to come from Atlanta to Marietta unless they had the assurance of a long work-week and some overtime at time and one-half. When the three-shift order was made, the plaintiff did not, in fact, change

its basis, but continued to work two ten-hour shifts. The first and largest item of the plaintiff's claim is for the asserted extra cost of overtime work. The plaintiff says that it paid out $37,746.67 for overtime work during the period here pertinent, and that its best judgment is that one-third of that sum was attributable to the fact that the A. E. M. diverted some concrete trucks which had been serving the plaintiff during the normal working day to supplying other contractors. One-third of its total overtime expense, plus 10 percent for overhead, comes to $13,840.44 which the plaintiff seeks in its first cause of action.

We think the plaintiff cannot recover on this cause of action. As we have said, the plaintiff got behind schedule in the beginning through no fault of its own or of the Government. When it was finally ready to use concrete on a large scale, it had no contract giving it a right to absorb the entire output of Campbell, leaving the other contractors and the project as a whole to fall behind. We think the plaintiff has not proved that it could have kept up with its schedule, even omitting consideration of delay in the beginning, if the concrete delivery and placing had not been put on a two-shift basis. If it could have done so, it would have been only at the will of Campbell, and at the expense of other contractors and the job as a whole. It was not entitled to do that.

■ The plaintiff's second cause of action is for $795.72, expended by Conserco, Inc., the concrete delivery contractor, to transport truck drivers from Washington, D. C., maintain them at Marietta, and pay them premium pay for night work. As shown in our Finding 19, either the contracting officer or the A. E. M. promised Conserco that if such expenditures were made, and if they exceeded what Conserco was required to do under its contract with Campbell, Conserco would be reimbursed. The plaintiff had no interest in this promise. It did not pay Conserco any amount on this account, is not liable to Conserco for it, and is in no contractual relation with

Conserco about it. The Government's promise was not made to the plaintiff for the benefit of Conserco, nor to the plaintiff at all. The plaintiff cannot recover upon this cause of action.

■ The plaintiff's third cause of action is for $2,184.70, the amount of a three percent federal tax upon freight charges for materials delivered to the job for the plaintiff. The tax was imposed by Section 620 of the Revenue Act of 1942, 56 Stat. 979, 26 U.S.C.A. § 3475, and became effective on December 1, 1942.

The plaintiff submitted its bid on this job on November 27, 1942. It had been informed that a tax on freight charges would take effect on December 1, and it inserted in its bid, to protect it from this added expense, the following statement:

Our quotation is based on freight rates in effect as of the date of this proposal.

After the bids had been opened, and when the contract with the plaintiff was being negotiated, the Government's negotiator told the plaintiff that paragraph 1–31 of the specifications, quoted in our Finding 24, would entitle the plaintiff to be reimbursed the amount of such a tax, and asked it to remove the qualification from its bid. But the Government has refused to so reimburse the plaintiff, because of a ruling of the Comptroller General that Paragraph 1–31 of the specifications, referring to a tax applicable to the "supplies or work" covered by the contract did not apply to a tax on freight charges.

A contract, whether with the Government or between private persons, means what the parties to it intend it to mean. Here they intended it to mean that the plaintiff would be reimbursed the amount of the transportation tax. The plaintiff may recover $2,184.70, on its third cause of action. As to its first and second causes of action, its petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, JJ., concur.